Smith, J.
I fully concur in the opinion delivered by my brother Yeates, though we have had no previous conference on the subject.
The dispute in this case, is in fact, between Thomas Harrison, to whom the bond, on which the action was brought, was equitably assigned before the 21st January 1797, and Elizabeth Kintzing, to whom the premises which Burke afterwards sold to the defendant, and for part payment of which this bond was given, had been previously mortgaged, viz. on the 8th October 1795, to secure the payment of 200I. Richard Allen is, or ought *357 to be, a mere stakeholder. Is Harrison, the equitable assignee, entitled to recover under the circumstances stated, or is this mortgage a defence to the plaintiff’s demand ?
In equity each is entitled to the money; for it is not alleged that Kintzing did not lend, or that Burke was not indebted to her every farthing of the 200I. ; nor is it alleged that Harrison did not give the full value for the bond, by Burke’s being previously indebted to him or otherwise; nor is it suggested, that he had *any notice of the mortgage till it was recorded, *358] which was more than a year after the bond had been assigned to him.
The act of May 1715, requires, that mortgages should be recorded in six months, or they shall not be good or sufficient to convey or pass any freehold or inheritance, or to grant any estate therein for life or years. And the act of March 1775, directs that all deeds and conveyances, &c. for or concerning any lands, tenements, or hereditaments, or whereby the same may be in any way affected in law or equity, and not recorded in six months, shall be fraudulent and void against any subsequent purchaser or mortgagee, &c. These laws are founded in wisdom and productive of justice and security, to purchasers and mortgagees in most cases. A case may happen, in which the protection intended by them cannot reach a subsequent mortgagee, without any want of caution on his part, as the title deeds in Pennsylvania do not necessarily, and in practice, accompany mortgages. In all other instances these laws protect purchasers and mortgagees; but both may lose that protection by their own neglect. Unless Kintzing has been guilty of such neglect, in not duly recording her mortgage, the plaintiff cannot recover, because it was given prior to the sale to the defendant, and if recorded in due time, it will take effect from the time of its execution.
The bond is equitably assigned; but it is a rule in law, that a bond, which is only assignable in equity, (and consequently a bond equitably assigned, or even legally assigned, as it may be in Pennsylvania) is still liable to and attended with the same equity, as if remaining with the obligee. 2 Verm. 765, 692. 1 Wms. 496. Prec. Cha. 522. 1 Equ. Ca. Abr. 45, pl. 5. 10 Mod. 455. 1 Stra. 240. The rule is right, that whoever takes the assignment of a bond, being a chose in action, takes it subject to all the equity in the hands of the original obligee; but length of time and circumstances may vary that, and make the case of the assignee stronger. 1 Vez. 123, per Ld. Hardwicke.
It has been assumed for granted in the argument, that the mortgage would be a good defence to Allen, against a recovery by Burke. I will also suppose the same thing, by which the question will be, whether length of time and circumstances have made the case of the assignee stronger ? I will state and observe upon both.
The mortgage is dated 8th October 1795, and the law required *358 that it should be recorded in six months ; but it was not recorded till 25th January 1798, just two years, three months, and seventeen days after its date. Fifteen days after the time, within which it ought to have been recorded, Burke sold the mortgaged ^premises to Allen, a bona fide purchaser without notice, [*359 Allen gave the bond in question to Burke for part of the I-purchase money, which was equitably assigned to Harrison, one year and four days before the mortgage was recorded. This assignment was made either in payment of a precedent debt, or for the value paid by Harrison to Burke ; for it is not suggested that he purchased it at a cent under its value. I perfectly agree with the defendant’s counsel, that if Harrison has not more equity than Kintzing, he cannot recover. This is one of those cases in which, from length of time and the circumstances stated, the bond so assigned became not liable to and attended with the same equity as when remaining with the obligee. The case of the assignee was thereby made stronger, and he has more equity than the mortgagee. One of them must suffer. Kintzing, by her neglect, became the instrument to enable Burke to commit the fraud. She alone must suffer by it, and not Harrison, who was in no default. By Kintzing’s neglect, Harrison took the assignment; by a continuance of that neglect for 1 year and 4 days after he took it, he was lulled into perfect security. Payments were even made to him in part. Burke is able to pay, or he is not. If he is, Kintzing can recover her money from him, and if not, she, and not Harrison, ought to be the loser. Moreover, by her neglect after the assignment, Harrison .was prevented from looking to Burke for the money which he had paid him for this bond. This circumstance also adds to Harrison’s equity, and lessens Kintzing’s.
But because the mortgage was recorded before the deed, which the defendant had also neglected to have recorded within the six months, the mortgagee is said to be yet entitled to recover, by the last clause in the 1st section of the act of 1775, and on the authority of Levinz v. Will, 1 Dall. 434.
The words of this act are certainly sufficiently comprehensive to include mortgages, had there not existed then the act of 1715, the 8th and 9th sections of which relate to mortgages exclusively. The 8th section declaring, that “ no deed or mortgage, “ &c. shall be good or sufficient to convey or pass any freehold “ or inheritance, or to grant any estate therein for life or years, “ unless recorded in six months,” it would be a strained construction to say that the clause referred to in the act of 1775, extends to mortgages, and gives them an effect by implication, contrary to the express words of the act of 1715, to the injury of innocent third persons. By the 8th section of the act of 1715, the recording of mortgages in six months is made a condition precedent; before the performance of it, no estate is conveyed or passed. But when this condition is performed, the mortgage takes effect by relation from the sealing and delivery. Cro. *360 *Car. 218, 449, 569. Cro. Jac. 52. 1 Wils. 212. 4 Co. 71. Holt 220. 2 Inst. 674. 1 Co. 99, b. Burr. 1131, 2787, 1952, 1962. 1 Bla. Rep. 251, 605. Pow. on Dev. 600.
By the act of 1775, recording is not necessary to pass the estate. It is declared, “that it shall be adjudged fraudulent and “void against any subsequent purchaser or mortgagee for a “valuable consideration.” As against all other persons, it is bona fide and valid, although never recorded; and even as against them, if it be recorded before their deeds, though after the six months. So by constraction, if they had notice of it, express or implied, it is valid against subsequent purchasers or mortgagees. 1 Equ. Ca. Abr. 358. 2 Equ. Ca. Abr. 482. Cowp. 712. 3 Atky. 654. 13 Vin. 550, pl. 9. 1 Vez. 64. Hargr. Co. Lit. 290, b. Ambl. 436, 624. Therefore the last clause in the first section of the act of 1775, for recording of deeds, does not apply to mortgages, not recorded within six months.
I have considered the case of Levinz v. Will with much attention, especially as I understood some years ago, that at least one of the bar, whose legal abilities I highly respect, had expressed dissatisfaction at the decision. I am free to own that at times my mind has been inclined to waver on the subject; but I cannot go so far as to say, that had I then been obliged to give my opinion, I would not (after hearing the strong reasoning of the late Chief Justice,) have concurred. Even if my doubts had been much stronger than they were, I would hold myself bound by the decision. But it does not reach this case. There was no innocent purchaser without notice to be affected by the neglect of the mortgagee. It does not appear that any of Levinz’s creditors had trusted him on the credit of the mortgaged property, or that the neglect of the mortgagee had enabled Levinz to commit a fraud upon any person. PIere, let me repeat, as one of two innocent persons must suffer, the loss ought to be borne by the person who is guilty of laches. I am therefore of opinion that judgment be entered for the plaintiff.
Brackenridge, J.
All the members óf the court have formed the same judgment, without communication between themselves.
When the legislature made bonds and notes assignable, and in the case of a bond with the solemnity of two witnesses, I scarcely think they had in view, that a defence could be set up against the assignee. But it has been early decided that it could be done, and we are bound by the decision. An exception has been taken to the general rule, and it has been lately decided, that where the taking an assignment is contemplated by a person, *and on application to the debtor, he is given to *361] understand that the bond will be paid, a defence cannot be afterwards set up. It might have been said in this case, that the debtor in saying that the bond was good, could mean no more than that for any thing he then knew, the bond was good *361 and would be paid, and that this admission made by him under a mistake and ignorance of what afterwards appeared, as to the consideration on which it was given, ought not to take away the equity of defence which otherwise did exist. But the point has been solemnly determined. This exception is founded on something done by the debtor before the assignment, an act of his which establishes a privity of transaction between the intended assignee and the debtor. But in the case before us, another exception is contended to be just, something not done before the assignment, which might have been done, and ought to have been done, the losing the consideration of the bond by neglect, the not recording a deed.
It would not lie in the mouth of the assignor to set up this. But an action of assembly has provided, that on the sale of real estate, it shall lie in the mouth of a purchaser without notice. There is not the same reason that it should lie in the mouth of an assignee of a bond, the consideration of which was the sale of the real estate; for the consideration does not appear upon the bond or note. He cannot by searching offices, or inspecting records, obtain information, of the validity of the writing, and that the sum on the face of it is recoverable. The debtor may say to the assignee, what have I to do with seeing you ? you took the assignment on the credit of the assignor. I am blameable for not supposing it possible that my consideration might fail by the dishonesty of the vendor, and by vigilance secured myself against it. You are blameable in not supposing it possible that the assignor might be dishonest, and made enquiry before the assignment, or secured yourself in the contract, or have had nothing to do with him at all; there is no privity between you and me in this transaction, that your taking this assignment should put me in a worse situation than I should otherwise have been in.
These were my ideas on first thinking on the subject, but I concur with the opinions which have been delivered.
In the case before us, a second class of exceptions have been stated; something done, or not done which ought to have been done by the debtor after the assignment. On application to the debtor, he says the bond is good. This may be under a mistake and ignorance of his defence ; it can mean no more, than that for any thing I know, the bond is good. It has been so decided *in the case at Reading, and even after such application, [*362 a defence was admitted against the assignee.
But payments have been made upon the bond. A bond may be payable by instalments, and the payment of the whole sum due would amount to no more than saying generally, the bond is good ; but the paying of the sum due and taking time from the assignee, and inducing him to forbear, would be another matter. He is laid asleep as to the assignor, to whom his eye had been before. For though it has been decided, or collected from the decisions of this court, that a covenant does not run with the assignment, that the bond or note shall at all events be. *362 paid, so as to secure against the insolvency of the debtor; yet it does, as to the want of consideration in whole or in part, and the assignee shall in that case recur to the assignor. If he loses any advantage of recurring instantly, by the act of the debtor, it is reasonable that the debtor should lose the equity of defence against him, which he might have had against the assignor. In the case before us, payment of part was made, and the assignee seems to have forborne. On this ground I feel- myself more firm, and. concur in favour of the assignee. He seems to be supported by the opinion of Ld. Hardwicke, in 1 Vez. 123, that length of time and circumstances may vary the general rule, that the assignee of a chose in action takes it subject to all the original equity, and may make the case of the assignee stronger.
Cited in 4 Yeates 279 to show that the eighth section of the act of 17x5 does not apply to deeds in general. Cited for the same purpose in 7 Watts 283.
Cited in 3 Phila. 113.
Judgment for the plaintiff.